**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAIDO METAL BELLEFONTAINE, LLC,** | : | |
| | : | **Case No. 2:10-cv-153** |
| Plaintiff, | : | |
| | : | **Judge Holschuh** |
| v. | : | |
| | : | **Magistrate Judge Deavers** |
| **MASON LAW FIRM CO., LPA, et al.,** | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

This state law action for legal malpractice was removed from the Logan County Court of Common Pleas by Defendants, the Mason Law Firm Co., LPA ("the Mason Law Firm") and attorney Ronald Mason ("Mason") (collectively "Defendants"), alleging federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal, doc. # 2.)  This matter is now before the Court on Plaintiff's ("Daido Metal") Motion for Remand (doc. # 9).  For the reasons stated below, the Court **GRANTS** Daido Metal's Motion for Remand.

**I.     Background and Procedural History**

In April of 2007, Mason entered into an attorney-client relationship with Daido Metal to represent the company in labor contract negotiations with the Union representing Daido Metal's employees.  Mason represented Daido Metal from April of 2007 through January 20, 2009. Beginning in May 2007, the Union began filing complaints with the National Labor Relations Board ("NLRB") charging Daido Metal with engaging in unfair labor practices in violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 151 et seq.  By the end of June 2007, the Union workers went on strike.  Ultimately, Daido Metal paid unemployment benefits to striking workers,

hired support workers from Japan during the strike, settled the Union claims of unfair labor practices, and paid severance to striking workers who were fired and other related costs to resolve these issues.

On January 19, 2010, Daido Metal filed a complaint against Mason and the Mason Law Firm in the Logan County Court of Common Pleas alleging legal malpractice. Specifically, Daido Metal alleges that Mason's conduct during his representation of Daido Metal fell below the appropriate standard of care for a practicing attorney under similar circumstances, and directly resulted in the strike, the need to defend unfair labor practices complaints, and financial injury to Daido Metal in costs it incurred during these disputes. On February 19, 2010, Defendants removed this action to federal court alleging that Daido Metal's state law claim was preempted by § 301 of the LMRA, 29 U.S.C. § 185, and thus presented a federal question. (Notice of Removal, doc. # 2.) On February 24, 2010, Defendants filed a Motion to Dismiss Plaintiff's Complaint under Rules 8(a) and 12(b)(6). (Doc. # 6.) On March 12, 2010, Daido Metal filed a Motion for Remand. (Doc. # 9.) On April 7, 2010, Daido Metal filed an Amended Complaint, primarily in response to Defendants' Motion to Dismiss. (Doc. # 15.) Both parties have filed their responses and replies, and this motion for remand is now ripe for adjudication.

## II.    Motion to Remand

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." District courts have original jurisdiction over cases that arise under federal law. See 28 U.S.C. § 1331. Generally, a cause of action "arises under federal law only when

the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). The existence of a federal defense, including the defense of preemption, does not normally justify removal to federal court. Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987).

However, the complete preemption doctrine provides an important exception to the well-pleaded complaint rule. The United States Supreme Court has held that sometimes the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Caterpillar, 482 U.S. at 393 (quoting Metropolitan Life Ins.Co., 481 U.S. at 65). In the area of § 301 of the LMRA, the Supreme Court has held that "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action" for violation of a collective bargaining agreement ("CBA"). Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983). Section 301 provides, in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has explained that the subject matter of § 301 of the LMRA 'is peculiarly one that calls for uniform law.' Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962) (citations omitted). "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Id. at 103. "The interests in interpretive uniformity

3

and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). Consequently, § 301 completely preempts any state cause of action that is "founded directly on rights created by collective-bargaining agreements," as well as those which are 'substantially dependent upon analysis of a collective-bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859, n. 3 (1987)).

Section 301 preemption applies to both state-law contract and tort claims. Allis-Chalmers, 471 U.S. at 217. See also Livadas v. Bradshaw, 512 U.S. 107, 122-24 (1994); Smolarek v. Chrysler Corp., 879 F.2d 1326, 1329 (6th Cir. 1989). The Supreme Court has cautioned, however, that not every tort claim relating to employment is subject to preemption under § 301. Those tort claims that are "independent" of the collective bargaining agreement are not subject to preemption under § 301. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 409-10 (1988); Allis-Chalmers, 471 U.S. at 213. See also Smolarek, 879 F.2d at 1330. On the other hand, if resolution of the state tort claim is "inextricably intertwined" with interpretation of the terms of the labor contract, the claim will be preempted. Allis-Chalmers, 471 U.S. at 213.

The Sixth Circuit has adopted a two-step approach to determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption. First, the district court must "examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994) (citing Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1037 (6th Cir. 1989), cert. denied, 495 U.S. 946 (1990)). Second, the court must "ascertain whether the right claimed by the plaintiff is created by the

collective bargaining agreement or by state law." Id. If the right is both created by state law and does not require contract interpretation, the claim will not be preempted. Id. If however, the right is either created by the collective bargaining agreement or resolution of the state law claim is "substantially dependent" on an analysis of the terms of the collective bargaining agreement, the claim will be preempted by § 301. Allis-Chalmers, 471 U.S. at 220.[1] However, "neither a tangential relationship to the CBA, nor [a] defendant's assertion of the contract as an affirmative defense [can] turn an otherwise independent claim into a claim dependent on the labor contract." DeCoe, 32 F.3d at 216 (citing Fox v. Parker Hannifin Corp., 914 F.2d 795, 800 (6th Cir. 1990)).

Defendants removed this case to federal court, arguing that Plaintiff's claim is preempted under § 301 of the LMRA because proof of the malpractice claim requires the interpretation of the LMRA as well as the terms of the collective bargaining agreement which Mason was negotiating. (Notice of Removal, doc. # 2; Def.'s Mem. Contra 1, 3, doc. # 12; Supp'l Mem. Contra 4-11, doc. # 21.) It is well settled that the burden of establishing federal jurisdiction rests on the removing party. See Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 948-49 (6th Cir. 1994). The right of removal is determined by the pleadings, viewed at the time of the petition for removal. Albright v. R.J. Reynolds Tobacco Co., 531 F.2d 132 (3d Cir. 1976). Generally, "when a defendant removes a case to federal court based upon the presence of a federal claim, an amendment elminating the basis for federal jurisdiction generally does not defeat jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 n. 6 (2007) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 346,

---

[1] The court must look "to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." DeCoe, 32 F.3d at 216.

5

357 (1988)). If there is any doubt about whether removal was proper, the court must remand the case. See Smith v. Nationwide Property & Cas. Ins. Co., 505 F.3d 401, 405 (6th Cir. 2007).

The Court notes at the outset that Plaintiff's Amended Complaint, filed in response to Defendants' Motion to Dismiss and to the Notice of Removal alleging that Plaintiff had used artful pleading to avoid federal jurisdiction, does not attempt to eliminate any basis for federal question jurisdiction that otherwise existed on the face of the original Complaint. The Amended Complaint only adds the specific facts upon which this malpractice suit is based, facts which Defendants speculated were the basis of Plaintiff's Complaint prior to the amendment, and facts which Defendants now argue only further strengthen their argument that removal was proper. (See Supp'l Mem. Contra 3, doc. # 21.) Therefore, concerns about forum manipulation, which are often present when a plaintiff amends after removal, are not present here. See Rockwell, 549 U.S. at 474 n.6; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 293 (1938). Thus, under these circumstances, and the Court's continuing duty to ensure that subject matter jurisdiction exists[2], the Court will consider Plaintiff's Amended Complaint.

In order to prove that Plaintiff's legal malpractice claim was properly removed, Defendants must show that proof of the legal malpractice claim requires, or is "substantially dependent" upon, analysis of the terms of the collective bargaining agreement. DeCoe, 32 F.3d at 216; Allis-Chalmers, 471 U.S. at 220. The determination of whether removal was proper in this case depends solely upon this first step of the two-step approach outlined in DeCoe, as Defendants have not argued that the right which Plaintiff is asserting was created by the collective bargaining agreement rather than state

---

[2]28 U.S.C. § 1447(c), governing procedure after removal, states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

law. (See Notice of Removal, doc. # 2; Def.'s Mem. Contra, doc. # 12; Supp'l Mem. Contra, doc. # 21.)  Furthermore, there is no question that Plaintiff's right to sue Defendants for legal malpractice arises solely from Ohio law, as there is no such federal cause of action, and Ohio law is the source of the attorney's duty to his client.  And under Ohio law, in order to establish a claim for legal malpractice, a plaintiff must show that (1) an attorney client relationship existed, giving rise to a duty, (2) breach of that duty wherein "the attorney failed to conform to the standard required by law," and (3) damages or loss which were proximately caused by the attorney's breach. Vahila v. Hall, 673 N.E.2d 1164, 1169 (Ohio 1997).

Defendants argue that proof of breach, proximate cause, and damages require interpretation of the terms of the collective bargaining agreement.  First, with respect to breach, Defendants explain that because Plaintiff's malpractice action arose in the context of the negotiation of a collective bargaining agreement, the Court must necessarily interpret both the language of the CBA and the terms proposed by Mason during negotiations, in order to determine whether Mason's conduct actually breached his duty of care to Plaintiff. (Notice of Removal, doc. # 2; Def.'s Mem. Contra 2, 5-6, doc. # 12.)  Defendants argue that unless the terms that Mason proposed were improper, or his conduct actually constituted an "unfair labor practice" under the LMRA, he could not have breached his duty to Daido Metal. (Supp'l Mem. Contra 6, 10, doc. # 21.)

First, the Court notes that the fact that the alleged malpractice took place during negotiations of a collective bargaining agreement does not automatically mean that the negotiated terms, or their meaning, are at issue and therefore dispositive of breach.  On the contrary, proof of breach depends upon showing that "the attorney failed to conform to the standard required by law." Vahila, 673 N.E.2d at 1169.  The standard required by Ohio law arises from the attorney client relationship, not

7

the LMRA or the collective bargaining agreement negotiated by the non-signatory Mason. Ohio law requires an attorney to "exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situtated, and to be ordinarily and reasonably diligent, careful and prudent[.]" Palmer v. Westmeyer, 549 N.E.2d 1202, 1205 (Ohio Ct. App. 1988).  Thus, proof of breach depends upon a showing that a similarly situated attorney would not have acted as Mason did, or that Mason was not "reasonably diligent, careful, and prudent" in handling the negotiations on behalf of Daido Metal.  Therefore, proof of breach does not require interpretation of the terms of the CBA, as Defendants claim, unless the "essence" of Plaintiff's claim is truly one in contract, that puts the scope and meaning of the terms of the CBA at issue.  DeCoe, 32 F.3d at 216.

Looking to the "essence" of Plainitff's claim here, this legal malpractice suit is based on Mason's demands, tactics, and communications with the Union, or lack thereof, during negotiations, which allegedly frustrated that process and resulted in the filing of unfair labor practices complaints and the workers going on strike. (Compl. ¶¶ 6-7, doc. # 3; Am. Compl. ¶¶ 6-8, doc. # 15.)  It also involves an allegation that Mason advised Daido Metal to take action against striking workers which Mason knew was unlawful. (Am. Compl. ¶ 6(i).)  This is not a labor contract claim that has been disguised as a tort. See DeCoe, 32 F.3d at 216.  Plaintiff has not put its or the Union's rights and duties under the CBA at issue.  Plaintiff has not alleged, for instance, that Mason negotiated an unfavorable CBA on its behalf, a claim which could conceivably "substantially depend[]" upon the interpretation of the terms of that agreement.  On the contrary, Plaintiff has alleged that Mason's conduct during the course of his negotiations with the Union fell below the applicable standard of care and caused the above-mentioned events, adverse to his client's interests, resulting in Daido

8

Metal's need to incur extra costs and expenses arising from the Mason-created events. Thus, proof of breach does not require or substantially depend upon the meaning of the terms in the CBA which Mason negotiated.

But Defendants argue that since Mason's contract proposals, or explanations thereof, allegedly led to the strike and unfair labor practices complaints, the court will necessarily have to enter into evidence and interpret the terms of his proposals. (Supp'l Mem. Contra 6-8) (citing Am. Compl. ¶¶ 6(d), (f),(g), (h)). Defendants also point out that in one allegation of the Amended Complaint, Plaintiff charges Mason with malpractice based on his proposed "elimination of contractual terms that were in prior contracts." (Id. at 8) (citing Am. Compl. ¶ 6(g)). Defendants argue that this means that Mason's proposed terms must be interpreted, as well as the terms which he sought to eliminate, thus requiring the interpretation of the CBA.

First, explanation or understanding of Mason's proposed terms is not the same as interpretation of the CBA's terms. Section 301 preemption focuses on whether the CBA at issue must be interpreted, not on whether contract proposals made during negotiations of a CBA, which may or may not have made it into the final CBA, must be interpreted. Second, as already explained above, Plaintiff has alleged malpractice based essentially on Mason's conduct toward the Union during negotiations and his failure to respond to the Union's inquiries. (Am. Compl. ¶¶ 6(a)-(i).) This conduct is completely independent from, and does not implicate, the meaning of the terms in the CBA bewteen Daido Metal and its workers' Union. Third, with respect to the sole allegation that mentions specific terms which were contained in prior labor contracts, the focus of that allegation is that Mason proposed the elimination of those terms "in an effort to frustrate the parties

9

from reaching an agreement."³ (Am. Compl. ¶ 6(g).)  The meaning of those terms, or the duties and obligations arising because of those terms, have not been put at issue.  At most, an explanation of those terms, or perhaps their import, might give context and relevant background as to why Mason allegedly proposed their elimination in order to frustrate negotiations.  In any event, Defendants do not seriously contend that the meaning of those terms are disputed. (See Supp'l Mem. Contra 8.)  Therefore, to the extent that those few terms of the CBA might need to be defined or explained, or Mason's "proposed terms" interpreted, resolution of Plaintiff's claim is not "substantially dependent" on interpretation of the terms of the CBA.

Defendants have additionally argued that federal jurisdiction exists because this claim cannot be decided "without referencing federal law" because, Defendants maintain, Mason must have proposed improper terms or violated the LMRA to have breached his duty to Plaintiff. (Supp'l Mem. Contra 10.)  However, mere reference to, or application of, federal law is not enough to create federal question jurisdiction. See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg., 545 U.S. 308, 313, 316 (2005).  Although the LMRA may be relevant to what a "similarly situated attorney" would have known and understood his responsibility to be, as well as to what he would have advised a client under the same circumstances, this reference to, or application of, federal law is not enough to satisfy the standard for § 301 preemption.  Further, a state-law claim cannot be preempted under § 301 based on the existence of a federal defense, or a defense which might merely implicate federal law or the terms of the CBA.  Caterpillar, 482 U.S. at 398-99.  Defendants'

---

³Paragraph 6(g) of Plaintiff's Amended Complaint alleges that Mason's conduct fell below the standard of care by "Proposing the elimination of contractual terms that were in prior contracts regarding Union representation, Union security, and dues check off, in an effort to frustrate the parties from reaching an agreement."

10

argument that Mason's proposed terms were not improper and that he did not commit unfair labor practices under the LMRA, constitute a potential defense to Plaintiff's claim. Plaintiff is not required to prove that Mason's proposed terms were unlawful or improper or that he actually committed unfair labor practices in order to prove that his conduct fell below the appropriate standard of care for a practicing attorney under Ohio law. In any event, injection of these issues still does not even implicate interpretation of the terms of the CBA, let alone "substantially depend[]" on their meaning for this claim's resolution.

Therefore, at best, the terms of the CBA are only tangentially related to Daido Metal's claim for malpractice and proof of breach is not "substantially dependent" upon, or "inextricably interwined" with, interpretation of those terms. Furthermore, the basic policy concerns underlying § 301 preemption, as explained in the Supreme Court's decisions in Teamsters v. Lucas Flour Co. and Allis-Chalmers, are absent here. In those cases, the Supreme Court explained that if labor contract disputes were not resolved under a uniform body of federal law, state and federal courts might interpret and apply the terms of collective bargaining agreements differently, thus leading to uncertainty and inconsistency in the duties and obligations arising between employers and employees under collective bargaining agreements. Teamsters, 369 U.S. at 103; Allis-Chalmers, 471 U.S. at 211. Here, Mason is not a party to the CBA, his duties and obligations are not defined by the CBA, and any interpretation of his "proposed terms," whether they were included in the final CBA or not, will not define or alter the relationship between the employer, Daido Metal, and its workers' Union. Thus, this legal malpractice claim is "independent" from the collective bargaining agreement for preemption purposes. See Dougherty v. Parsec, Inc., 872 F.2d 766, 770-71 (6th Cir. 1989).

But Defendants also argue that proof of proximate cause and damages will require this court to interpret the collective bargaining agreement and the LMRA, thus making removal proper. Defendants argue that the Supreme Court of Ohio has acknowledged that causation in a malpractice suit often depends on the merits of the underlying case. (Def.'s Mem. Contra 9-10) (citing Vahila, 673 N.E.2d at 1170). Defendants argue that this is one such case and therefore, Ohio's "case-within-a-case doctrine" applies, requiring Plaintiff to litigate the merits of the underlying action on which the malpractice claim is based in order to prove causation and damages. (Def.'s Mem. Contra 10) (citing Environmental Network Corp. v. Goodman Weiss Miller, L.L.P., 893 N.E.2d 173, 176-77 (Ohio 2008)). Defendants maintain that because Plaintiff claims that Mason's conduct directly resulted in a strike, unfair labor practice complaints, and the costs associated with those events, the underlying actions are the merits of those complaints and whether the employees had a right to strike. (Def.'s Mem. Contra 5-6, 9-10; Supp'l Mem. Contra 6, 9-11.)

In Vahila, the Supreme Court of Ohio recognized that "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case." 674 N.E.2d at 1170. However, the supreme court refused to "endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter." Id. In that case, the court found the "case-within-a-case doctrine" inapplicable where the plaintiffs had sustained damages under their theory of recovery, regardless of whether they could prove that they would have been successful in the underlying matters. Id. at 1169. In Vahila, plaintiffs sued their attorneys for malpractice based on the attorneys' representation of the Vahilas in several civil and criminal matters. The plaintiffs' theory of recovery was that the attorneys had failed to "properly disclose all matters and/or legal consequences surrounding the various plea

12

bargains entered into by Terry Vahila and the settlement arrangements agreed to by [plaintiffs] with respect to the several civil matters." Id. at 1169.  The plaintiffs also claimed that their attorneys had not adequately protected their interests and had alleged losses and lost profits totaling $300,000. Id. The court found that, based on these facts, plaintiffs had arguably sustained damages regardless of whether they would have been successful at trial of the underlying matters. Id.

In reaching this conclusion in Vahila, the supreme court found the principles set forth in Krahn v. Kinney, 538 N.E.2d 1058 (Ohio 1989) applicable. Id. at 1167-68.  In Krahn, the plaintiff managed a bar owned by High Spirits and hired attorney Kinney to represent her with respect to three misdemeanor gambling charges.  High Spirits also retained Kinney to defend the establishment with respect to a citation from the Ohio Department of Liquor Control.  538 N.E.2d at 1059 (syllabus by the court).  Kinney failed to communicate to Krahn that the prosecutor offered to dismiss the charges against her in exchange for her testimony against the supplier of the gambling device. Id.  On the day of trial, Krahn followed Kinney's advice to withdraw her plea of not guilty and enter a plea of guilty to one of the charges which he informed her was a minor misdemeanor. Id. at 1060 (syllabus by the court).  Krahn later found out that she had actually pled guilty to a first degree misdemeanor, not a minor misdemeanor.  In the meantime, Kinney never appeared to represent High Spirits at the hearing in front of the Ohio Liquor Control Commission. Id. (syllabus by the court).  Krahn and High Spirits sued Kinney for malpractice alleging that, as a result of Kinney's conduct,  Krahn was convicted of a first degree misdemeanor, incurred damage to her reputation, suffered emotional distress and that High Spirits had incurred extra legal fees and expenses. Id.  The supreme court held that neither Krahn nor High Spirits was required to obtain reversal of the underlying conviction or penalty in order to state a claim for malpractice. Id. at 1060-

13

61. With respect to Krahn, the court explained that part of her claim was based on Kinney's failure to communicate the plea offer and that her injury was 'not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.' Id. at 1061 (citing the court of appeals' opinion).  Similarly, the injury suffered by High Spirits was "not the penalty ultimately imposed by the commission, but the expenses involved in rectifying Kinney's failure. High Spirits states a cause of action regardless of whether the ultimate penalty imposed by the commission is reversed." Id. At 1061-62.

In Environmental Network however, the supreme court distinguished Vahila and the above reasoning, finding that the plaintiffs' theory of recovery in that case did require the application of the "case-within-a-case doctrine" in order to prove causation and damages. 893 N.E.2d at 177-78. In that case, plaintiffs hired the defendant attorneys to bring a civil lawsuit against two other parties. On the second day of trial, plaintiffs' attorneys settled the case. Id. at 175.  Thereafter, Environmental Network sued their attorneys claiming that their malpractice led to "a coerced settlement and that [plaintiffs] would have achieved a better result if the underlying case had been tried to its conclusion." Id. at 176.  The supreme court explained that, based on this sole theory of recovery, and unlike the circumstances in Vahila, plaintiffs could only prove that the malpractice caused their damages if they would have been successful in the underlying lawsuit and would have obtained a judgment that was more favorable than the terms of settlement. Id. at 177.  Otherwise, the attorneys' malpractice could not have caused plaintiffs any harm.  Thus, the court held that where the plaintiff's theory of recovery is that he would have received a better result if the case had been tried to its conclusion, rather than settled, the plaintiff must litigate the merits of the underlying case in order to prove causation and damages in the malpractice suit. 893 N.E.2d at 175.

The present claim for malpractice is more analogous to those in <u>Vahila</u> and <u>Krahn</u> than that in <u>Environmental Network</u>.  Here, like in <u>Vahila</u>, Plaintiff has alleged arguable damages regardless of whether Daido Metal would have been vindicated of the unfair labor practices charges, or instead settled them as the Amended Complaint alleges, and regardless of whether the CBA allowed the workers to strike on a particular basis.  Plaintiff's theory of recovery is that Mason's practice of law during negotiations fell below the appropriate standard of care, resulting in the Union filing unfair labor practices complaints based on his conduct. (Am. Compl. ¶¶ 6-7.) Mason's conduct is also alleged to be the primary reason that the Union commenced a strike, a strike which was "based upon unfair labor practices rather than economic issues," thus resulting in Daido Metal having to pay unemployment benefits. (<u>Id</u>. ¶ 8.)  Additionally, as a result of the strike, Daido Metal had to hire replacement workers to keep up with production. (<u>Id</u>.)  Daido Metal had to defend and eventually settle the unfair labor practices complaints, pay severance to striking workers who were fired, and other costs related to these events. (<u>Id</u>.)  Thus, regardless of whether the unfair labor practices complaints were founded, i.e. whether Daido Metal actually violated the LMRA, once those claims were filed, Daido Metal would be incurring additional costs to defend itself.  Likewise, it appears that regardless of the reason for the strike, once the strike began, Daido Metal was in a position similar to High Spirits in <u>Krahn</u>, where it had to incur expenses to rectify the situation separate and apart from the ultimate penalty imposed.  In this case, that meant hiring replacement workers until the strike was resolved, and regardless of how it was resolved.

Unlike the plaintiff in <u>Environmental Network</u>, Daido Metal is not solely alleging that Mason's representation of it during the unfair labor practices complaints was negligent and led to a less favorable settlement than it could have otherwise obtained.  Instead, Daido Metal is alleging

15

that Mason's malpractice created the problem in the first place, causing these complaints to be filed against Daido Metal. Thus, even if Daido Metal had later been vindicated, it still would have incurred extra costs in defending against those actions. Daido Metal therefore has made a claim for damages that exists regardless of whether it claims, or could prove, that but for Mason's malpractice, the ultimate resolution of these complaints would have been more favorable. Similarly, with respect to the strike, Plaintiff is not alleging that Mason included unfavorable terms in the CBA, which allowed the workers to strike under these circumstances, causing Daido Metal damages. Instead, Plaintiff is alleging that the workers went on strike because of Mason's malpractice. At a minimum then, Daido Metal had to hire replacement workers and incur that cost, regardless of the basis of the strike and therefore, regardless of whether Daido Metal was ultimately required to pay other benefits to the striking workers.

Therefore, the Court finds that Daido Metal has alleged a theory of recovery that, if proven, would show that it sustained damages regardless of the merits or ultimate resolution of the unfair labor practices complaints and the strike. See Vahila, 674 N.E.2d at 1169. Furthermore, it is not clear that Plaintiff is even alleging that, in addition to causing the unfair labor practices complaints to be filed, Mason also negotiated a bad settlement of those claims. (See Am. Compl. ¶¶ 6-8.) However, even if Plaintiff does intend to prove such damages, and it does involve assessment of the merits of the unfair labor practices complaints, once again, that does not implicate the terms of the CBA but rather, calls for application of the LMRA to the facts. This is insufficient to satisfy the preemption analysis under § 301. It bears reiterating that § 301 only preempts suits "for violation of contracts between an employer and a labor organization . . ." (or between labor organizations), or claims which require, "substantially depend[]" upon, or are "inextricably intertwined" with

16

interpretation of the terms of a collective bargaining agreement. 29 U.S.C. § 185 (emphasis added); Allis-Chalmers, 471 U.S. at 213, 220.

With respect to the provisions of the CBA concerning the employees' right to strike, Defendants have only briefly asserted that the court will have to "address" that issue and that whether the Union was permitted to strike under the CBA is essential to Daido Metal's claim for damages. (Def.'s Mem. Contra 5; Supp'l Mem. Contra 10.)  However, potentially addressing one unidentified provision of the CBA does not make Plaintiff's claim "substantially dependent" upon, or "inextricably intertwined" with, interpretation of the terms of the CBA.  Furthermore, in addition to failing to identify the provision of the CBA that must allegedly be interpreted, Defendants never actually argue, or even suggest, that the Union did not have a right to strike.  Simply put, the employees' right to strike does not appear to be a substantial, or actually disputed, issue in this case. Rather, the Union's basis for striking is what appears to matter.  As explained above, Plaintiff has alleged that Mason's conduct "became a primary reason for the Union commencing its work strike at Daido Metal based upon unfair labor practices rather than economic issues, which directly and proximately resulted in Daido Metal having to pay unemployment benefits to striking workers . . . ." (Am. Compl. ¶ 8) (emphasis added).  Thus, at best, this claim for damages appears to be only tangentially related to a provision in the CBA, which has not been identified, that might address the right to strike and the benefits due to striking workers.  A tangential relationship to the CBA is not enough to preempt a state law claim and therefore, Defendants have not shown that removal was proper on this basis.

Defendants' final appeal to this Court's jurisdiction relies upon an analogy to patent law. Defendants analogize the present claim for legal malpractice in the context of collective bargaining

17

negotiations to legal malpractice in the context of patent law, where an attorney's conduct often cannot be evaluated without an understanding and interpretation of federal patent law, and therefore, presents a federal question. (Def.'s Mem. Contra 10-11; Supp'l Mem. Contra 9-10; Mot. Leave to File Supp'l Auth., Ex. A, doc. # 22-1) (citing TattleTale Portable Alarm Systems, Inc. v. Calfee, Halter & Griswold, LLP, No. 08AP-693, 2009 WL 790314 (Ohio Ct. App. Mar. 26, 2009); Lemkin v. Hahn Loeser & Parks LLP, No. 09AP-1051, 2010 WL 1881962 (Ohio Ct. App. May 11, 2010)). First, the fact that federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks" is an important, and key reason that legal malpractice claims in the area of patent law more often must be decided by federal courts. 28 U.S.C. § 1338(a). Second, patent law is uniquely federal and in both Ohio Court of Appeals' decisions cited by Defendants, the plaintiffs' legal malpractice claims raised substantial issues of federal patent law, including whether the attorney had followed the federal regulations governing the reinstatement and revival of patents, what the scope of the underlying patent was in order to determine damages based on lost royalties, and whether failing to cite prior art in a provisional application for a patent constitutes a "material omission." TattleTale, 2009 WL 790314 at *3 ; Lemkin, 2010 WL 1881962 at *4. This is not the situation presented here, as Plaintiff's state law malpractice claim does not arise under federal law, nor does proof of this claim "substantially depend[]" upon the interpretation of the CBA. Thus, Defendants' reliance on patent law is misplaced.

Therefore, for all of the above reasons, the Court finds that Defendants have failed to show that Plaintiff's state law claim was properly removed as preempted under § 301 of the LMRA. The central focus and policy underlying § 301 preemption when state tort law is implicated is that the

state claim should be preempted where, in actuality, it is a labor contract claim disguised as a tort. DeCoe, 32 F.3d at 216.  To put another way, where the duties imposed and the rights established by the state tort actually derive from a collective bargaining agreement, or substantially depend upon the meaning given to the terms of the collective bargaining agreement, the claim should be preempted under § 301. Allis-Chalmers, 471 U.S. at 217, 219. Here, Plaintiff's rights and Defendants' duties are both established by state law, not the CBA.  Those rights and duties, between the employer and its attorney, are not substantially dependent upon the meaning of the collective bargaining agreement between the employer and its workers' Union.  The fact that reference may be made to that agreement, or that parts of the LMRA may be applicable, do not preempt this legal malpractice claim.

### III.    Conclusion

For the reasons stated above, the Court **GRANTS** Daido's Motion for Remand (doc. # 9) and **REMANDS** this case to the Court of Common Pleas of Logan County.  The motion to dismiss remains pending for the state court.

**IT IS SO ORDERED.**

Date: June 18, 2010  **/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court

19